**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal No. 1:24-MJ-00348-MAU** |
| **ROBERT SPRIGGS,** | |
| *Defendant.* | |

## UNITED STATES MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion for an Order detaining the defendant, Robert Spriggs, pending trial, pursuant to 18 U.S.C. §§ 3142(f)(1)(E).

The defendant was arrested and charged with a felony for possessing a firearm after previously being convicted of a felony. The arrest came after the defendant was found alone in his residence with two handguns and a Draco submachine pistol during the execution of a search warrant related to the defendant's participation in a Washington, DC based drug trafficking organization that was trafficking in PCP, fentanyl, and Marijuana.

The government respectfully submits that the defendant should be detained pending trial, pursuant to 18 U.S.C. § 3142(f)(2)(B). The defendant has been charged with a felony for possessing a firearm following a previous felony conviction. Furthermore, the defendant presents a serious danger to the community both for his role in the drug trafficking organization that was selling PCP, fentanyl, and marijuana and because the defendant continues to possess firearms after previously being convicted for possessing a firearm, has access to even more firearms.

## Procedural Background

On October 30, 2024, as part of a long running investigation of a Drug Trafficking Organization (DTO) operating in Washington, DC, the Federal Bureau of Investigation (FBI) and the Drug Enforcement Administration (DEA) executed search warrants on three residences in Washington, DC and two residences in Maryland looking for evidence of violations of 21 U.S.C. §§ 841(a)(1) (Distribution and Possession with Intent to Distribute Marijuana) and 846 (Conspiracy to Distribute and Possess with Intent to Distribute Marijuana) and 18 U.S.C. § § 924(c) (possession of a firearm in furtherance of a drug trafficking crime), 922(g)(Felon in Possession of a Firearm) (the "TARGET OFFENSES"), and 371 (Conspiracy). The defendant was found alone in one of the D.C. residences with two handguns and a Draco sub-machine pistol.

On October 30, 2024, the defendant was charged by complaint with violations of 18 U.S.C. §§ 922(g) (Felon in Possession).

At the defendant's initial appearance on October 31, 2024, the government orally moved for detention pursuant to 18 U.S.C. § 3142(f)(1)(E), because the defendant has been charged with a felony for possessing a firearm after having been convicted of previous felony. The Court ordered that the defendant be temporarily detained until the detention hearing scheduled for November 5, 2024 at 2:00 p.m.

## Factual Proffer of the Evidence Supporting the Charges

1. Since at least August 2023, the Drug Enforcement Administration (DEA) and the Federal Bureau of Investigation (FBI) have been conducting a criminal investigation of local PCP and fentanyl distributors who are associated with the defendant. Following the arrest of those distributors and related searches, the defendant and others continued to traffic in narcotics and engage in related travel as described below until the FBI and DEA executed federal search warrant

on several locations related to their activity including the defendant's residence and a stash house tied to the defendant.

2.      On May 26, 2011, the defendant pleaded guilty to felony Carrying a Pistol without a License - Outside Home/Business (CPWL) in case number (2011 CF2 001658).   The defendant was sentenced to nine months incarceration with all nine months suspended.   Despite the suspension, the defendant knew that the potential penalties for CPWL included incarceration for more than a year and also knew that post-conviction he was not supposed to possess a firearm.

3.      On February 25, 2024, Lamont LANGSTON was arrested in the District of Columbia and found to be in possession of two firearms—one of which featured a switch transforming it into a machine gun—as well as PCP and nearly $10,000 in cash.

4.      The defendant and LANGSTON were part of the same DTO.   In the four months prior to LANGSTON's arrest, a combination of LANGSTON, the defendant, and others traveled together multiple times between airports in the Baltimore-Washington area and Los Angeles, California.   Specifically, SPRIGGS and LANGSTON traveled to Los Angeles International Airport ("LAX") on December 30, 2023, and returned to Baltimore-Washington International Thurgood Marshall Airport ("BWI") the next day, December 31, 2023.   The TARGETS have made numerous similar trips in the last two years.   SPRIGGS and another associate flew from LAX to BWI on August 12, 2023.   SPRIGGS and other associates flew from LAX to BWI on September 2, 2023 and SPRIGGS flew to BWI from LAX on November 30, 2023.

5.      During a search of data recovered from a phone seized from LANGSTON on the date of his arrest, a series of chats between LANGSTON and another associate was found that included a picture of a printed invoice or itinerary listing strains of marijuana, their pricing, and quantity.   LANGSTON responded with "we aint got time to be stuck with shit bob" based on my

training, knowledge, and experience, your affiant knows this to mean that LANGSTON wants to be sure they are only purchasing higher quality marijuana that will be sellable.

6.    Your affiant knows through training, knowledge, and experience that Baltimore and Washington, D.C. are destination cities for narcotics and that Los Angeles is a frequent source city for narcotics.    Additionally, your affiant knows through training and experience that drug traffickers may make short cross-country trips to the West Coast for only one or two nights for the purpose of collecting and returning narcotics to the East Coast as the defendant did here.

*The February 8-9, 2024, Trip to Los Angeles and the Airport Seizure*

7.    On February 8, 2024, LANGSTON was booked to fly on United flight #251 from BWI to LAX.  On the morning of February 8, 2024, LANGSTON'S phone traveled to BWI, however, LANGSTON did not board United flight #251 from BWI that morning.  Instead, he traveled to Ronald Reagan Washington International Airport ("DCA") where he booked and boarded a different flight leaving later that morning from DCA to LAX.  SPRIGGS and other associates flew from BWI to LAX on February 8, 2024, on LANGSTON'S original booked flight, United #251.  From my training and experience, I know that narcotics traffickers may book flights they do not intend to take, and then take other flights instead, for the purpose of evading law enforcement tracking.

8.    On February 9, 2024, LANGSTON, SPRIGGS, and other associates were on Southwest flight #499 bound from LAX to BWI and had checked two bags.  Agents were at the arrival gate at BWI and observed LANGSTON and SPRIGGS deplane at the gate and proceed to the baggage claim area.  Agents who were in the baggage claim area observed LANGSTON and SPRIGGS together near the carousel as they awaited their bags.

9.      SPRIGGS had two checked bags on the Southwest flight #499 from LAX to BWI on February 9, 2024.  Both of SPRIGGS' checked suitcases also elicited a positive response to the presence of narcotics from a drug K9.  SPRIGGS' suitcases were returned to the carousel of baggage claim #2, where SPRIGGS retrieved them.

10.     After SPRIGGS retrieved his bags, law enforcement approached SPRIGGS, informed him of the positive response of the K9, and requested consent to search his suitcases. SPRIGGS provided consent to search his two suitcases and the law enforcement members found approximately 54.5 pounds (24.7 kg) of marijuana packaged in dark-colored vacuum-sealed plastic bags containing between 1.1 and 1.3 pounds of marijuana each, as shown in the photograph below:



After the search and seizure of his two suitcases, SPRIGGS was allowed to leave the airport, per airport law enforcement policy.

11.     While the law enforcement team interacted with SPRIGGS, LANGSTON remained in the area for a time, and then left the baggage claim area and appeared to leave them behind and depart BWI.

12.     On March 6, 2024, FBI agents conducted a search warrant at the residence of Kelvin SANKER Jr., a charged co-conspirator of LANGSTON's.  At the residence, agents located approximately one pound of marijuana and identified indicia of marijuana distribution to include similar distribution packaging to that which was recovered during the BWI airport seizure on February 8, 2024.  In particular, law enforcement found a user quantity of marijuana in the same packaging as that found at Dulles Airport.  Additionally, agents seized SANKER's cell phone which contained a text conversation between SANKER and another of the defendant's associates regarding a potential bulk marijuana sale between them.  SANKER was indicted on April 11, 2024, for violating 21 U.S.C. § 846, Conspiracy to Distribute and Possess with Intent to Distribute Phencyclidine.  SANKER was arrested on April 17, 2024.

*The Stash House*

13.     SPRIGGS appears to reside part-time at 1901 C St. SE, Apartment 143, Washington, D.C. (the "Stash House").  According to Verizon's records, SPRIGGS currently has a Verizon Fios Account that lists the Stash House as the account address.  The account also lists his name, email, and phone number.  The defendant admitted that he was in the stash house apartment a couple of times a week and in the building pretty much daily.  During the search, agents also found his work ID in a cabinet with marijuana and packaging.  Also found in the apartment were three handguns and another Draco submachine pistol.

14.     Members of SPRIGGS' DTO appear to use the stash house as a central location to keep and sell narcotics.  Between April and the end of October, 2024, various members of the

DTO, including SPRIGGS, were observed going in and out of the stash house building and then engaging in hand to hand transactions consistent with narcotics sales with people in cars outside but nearby the stash house. SPRIGGS was observed engaging in such hand to hand transactions on a daily basis outside the stash house. Further evidence of their use of the stash house as part of their DTO is shown by the evidence found during the October 30, 2024 search warrant described below.

15.    On October 30, 2024, at approximately 3:00 a.m., the Federal Bureau of Investigation (FBI), pursuant to a federal search warrant, searched the stash house. There, agents found approximately 3,000 fentanyl pills, more than six pounds of marijuana (in five bags of 1.2 pounds each and 50 - 100 small personal use sized bags), two prescription bottles labeled as oxycodone with the subscribers' information ripped off (this is consistent with diversion and trafficking of prescription oxycodone), a bottle of suspected codeine, a bottle of promethazine, and roughly $1,200 in cash. In addition, agents found three handguns, a Glock 20 10mm, Glock 21, and a Smith and Wesson MP Shield 9mm, and a Draco Submachine gun, and an unknown amount of loose ammunition of various calibers.



















*Search of SPRIGGS' Residence*

16.     Also on October 30, 2024, at approximately 3:00 a.m., the Federal Bureau of Investigation (FBI) and DEA, pursuant to a federal search warrant, searched the residence of the defendant at 50 49th Street, SE, Apartment B2, Washington, DC.

17.     As agents approached the door, SPRIGGS opened it and let them in.  Upon entry, agents observed a loose round of unknown caliber on the floor of the living room.  SPRIGGS was in the residence.  No one else was.

18.     After seeing the ammunition on the carpet, agents asked SPRIGGS if there were any firearms in the apartment.  SPRIGGS stated that there was a firearm in the kitchen drawer.  In the kitchen drawer, agents found one Springfield XD 10mm pistol S/N: BB226103, which was fully loaded with one round in the chamber, and one -.45 Kahr arms pistol, S/N: SE0587.  Also in the kitchen drawer was loose .45 caliber ammunition.

19.     In a bag on the floor of a bedroom closet, agents found one AK Style Draco pistol Model PAPM85NB, 5.56x45 caliber, assorted ammunition, one handgun magazine, one standard 30 round magazine for the Draco with an unknown amount of ammunition, and one drum magazine also for the Draco.  Agents asked SPRIGGS if there were any more guns in the apartment and SPRIGGS acknowledged that there was one in the closet that he thought was a rifle.

20.     Agents asked if SPRIGGS was on probation or parole and SPRIGGS replied that he was not.  Agents then asked SPRIGGS if he was a felon and SPRIGGS replied that he was. SPRIGGS stated that he was the only resident of the apartment and that he paid $1000 per month in rent.

21.     Photos of the firearms and identifying documents belonging to SPRIGGS that were found in the residence are below:



22





23.





24.     On October 30, 2024, during an interview with law enforcement following the search, and after being read his Miranda rights and acknowledging them in writing, SPRIGGS acknowledged that he was a felon, that he was not supposed to have a firearm, that he had previously been convicted of CPWL, and that, although he was sentenced to 9 months of incarceration with 9 months suspended when he pled to that offense in 2011, he knew that he faced a potential sentence of incarceration for more than a year for that offense.

25.     Therefore, at the time the defendant possessed the firearms, he had been convicted of a crime punishable by imprisonment of a term exceeding one year and had knowledge of that fact.  In addition, firearms and ammunition are not manufactured in the District of Columbia; therefore, the firearms and ammunition seized traveled in interstate or foreign commerce.

## Principles Governing Requests for Detention

The Bail Reform Act, 18 U.S.C. § 3142, provides for pretrial detention where there is "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  *See United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).  The Act provides for pretrial detention where the defendant is charged with a "crime of violence," 18 U.S.C. § 3142(f)(1)(A) and where there is a "a serious risk that [the defendant] will obstruct or attempt to obstruct justice, or threaten . . . or intimidate, or attempt to threaten . . . or intimidate, a prospective witness[,]" 18 U.S.C. § 3142(f)(2)(B).

The Act requires the Court to consider four factors in resolving a motion for pretrial detention: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence against the defendant; (3) the history and

characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g).

When community safety is the basis for detention, the government must prove the need for detention by clear and convincing evidence.  *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

## The Factors Supporting Detention

The government respectfully submits that each of the four Bail Reform Act factors weighs in favor of detention and supports the government's contention that no condition or combination of conditions can reasonably assure the safety of the community and the defendant's appearance at trial, and that the defendant presents a serious risk of obstruction of justice.

1. Nature and Circumstances of the Offense Charged

The nature and circumstances of the offense weigh heavily in favor of detention.  The defendant is charged with being a felon who was not allowed to possess a firearm, knew he was such, and did so anyway.  And not just one firearm, but three in the residence he was found in, two hand guns and a Draco submachine pistol, and another four firearms in the stash house, where he sometimes spent the night, including a second Draco submachine pistol, along with 3,000 fentanyl pills and a lot of other contraband and material consistent with a drug trafficking operation.  In addition, the defendant faces serious jail time for serious offenses that posed a threat to the safety of the community and included a pattern of continuing to engage in the same activities even after having been previously arrested and convicted for nearly identical illegal activity.

  a.  *The Defendant's Charged Conduct Weighs in Favor of Detention*

The defendant has been charged with a single count of 18 U.S.C. § 922 (Felon in Possession).  He possessed the firearm at issue while involved in the drug trafficking organization

that is the basis of the investigation.  And his previous felony conviction was also for illegally possessing a firearm.

Finally, in considering the nature and circumstances of the offense, the Court should also weigh the penalty the defendant faces upon conviction.  *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990).  As noted above, in this case the defendant faces significant prison time.

2. <u>The Weight of the Evidence</u>

The weight of the evidence against the defendant is substantial and weighs heavily in favor of detention.  This factor is a "common-sense" consideration: "[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *United States v. Blackson*, No. 23-cr-25 (BAH), 2023 WL 1778194, at *10 (D.D.C. Feb. 6, 2023) (Howell, C.J.), *aff'd*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023).

Here, the defendant was found alone in a residence that he acknowledged he was the only resident of.  He identified the location of the two handguns in the kitchen drawer to law enforcement and then also acknowledged the location of the Draco in the closet.  He admitted that he had a previous conviction, that he knew he was a felon, that he knew that the previous conviction could have included more than a year of incarceration, and that he was not supposed to possess a gun.

Furthermore, there is significant evidence consistent with a drug trafficking operation being run out of the stash house and showing the defendant's connection and regular presence in that location (since he was observed actively distributing narcotics in front of the house daily, his

ID was in the stash house, and he admitted to having been there).  He had access to and dominion over the contents of the stash house including narcotics and four additional firearms.

3.  <u>History and Characteristics of the Defendant</u>

The defendant's history and characteristics favor detention.  The defendant has a prior conviction for the possession of another handgun.  Although he appears to have a regular job, he also travels with the rest of his drug trafficking organization to California and elsewhere to collect narcotics for distribution, even after LANGSTON and other members of the drug trafficking organization were arrested.  Although the defendant has minimal additional criminal history, the characteristics that he displayed through this investigation show that he cannot be released.  The defendant has shown no indication that he will cease distributing narcotics or that he will stop possessing multiple handguns and submachine pistols.  He apparently has ready access to more as there were more guns than people in the searched residences on October 30, 2024.  And he readily acknowledged that he and firearms and that he should not have had them and knew it, and yet, even after LANGSTON and other were arrested, even after he was previously convicted of carrying a firearm, he continued to possess firearms, and continued to traffic in narcotics.

4.  <u>The Nature and Seriousness of the Danger to Any Person or the Community</u>

The nature and circumstances of the dangers posed by the defendant's release also weigh heavily in favor of pretrial detention.  The defendant is charged with crimes that have great potential to harm members of the community.  He had numerous firearms, he was a part of a drug trafficking organization that was dealing fentanyl, among other narcotics, and even after other members of his organization were arrested, he continued to traffic in narcotics.  The danger of the defendant's continued access to and possession of firearms is obvious.  Moreover, "[t]he statutory language, as well as the legislative history [of the Bail Reform Act], unequivocally establishes that

Congress intended to equate traffic in drugs with a danger to the community." *United States v. Strong*, 775 F.2d 504, 506 (3d Cir. 1985). The substantial evidence shows that, in addition to his illegal possession of firearms the defendant was engaged in the business of selling narcotics to members of the community, thereby endangering them and others. Therefore, the nature and seriousness of the danger to the community of releasing the defendant weigh against his release.

### Conclusion

Taken together, the four factors clearly favor detention for the defendant. The charges are serious and well-supported by the evidence. There is every reason to believe that his conduct, and its danger to the community, would persist if he were released. The defendant committed serious crimes, continued to commit them after the arrest of other members of his organization, and showed no signs of stopping either possessing firearms or of distributing narcotics. The Pretrial Services Report states, "No condition or combination of conditions can reasonably assure the defendant's appearance or safety to the community." The report is correct. The defendant should be detained pending trial.

The government respectfully submits that, in this context, without pretrial detention, no condition or combination of conditions will reasonably assure the safety of any other person and the community.

For all of the foregoing reasons, the government respectfully submits that no condition or combination of conditions will reasonably assure the safety of any other person and the community. The government therefore requests that the Court order that the defendant be detained pending trial.

Respectfully submitted,

MATTHEW GRAVES

21

UNITED STATES ATTORNEY

By: _____/s/_____
    Peter V. Roman, DC Bar No. 984996
    Assistant United States Attorney
    United States Attorney's Office
    601 D Street, N.W.
    Washington, D.C.  20530